GORSTEIN v. WORLD SAVINGS BANK Well, anything I would say would be redundant, Your Honor. I think everything has been spelled out in the papers I have submitted to you. And that's about the strongest argument I think I could make. So I'll rest on what you have in front of you. All right. Thank you very much, Mr. Gorstein. Thank you, Your Honor. Counsel? Mr. Gorstein caught me a little bit off guard because he usually has quite a bit to say. And I won't take up any more of the Court's time than is absolutely necessary. I also believe that the issues are succinctly briefed. They're thoroughly outlined. However, I had intended to respond to anything that Mr. Gorstein might have to say here this morning or to answer the Court's questions, if the Court has any. I have a question, Counsel, with regard to the 407A claim. The Supreme Court in the Keffler case appeared to make a fairly strong statement. To put it in common terms, you don't mess with Social Security benefits. Why shouldn't banks, as a policy matter, be certainly, if they're aware that they're receiving direct deposits of Social Security funds, aware of that when they receive orders like they did in this case? Well, I think, in fact, banks are aware of the restrictions that apply to Social Security benefits when they're directly deposited into an account. The context of this case, however, suggests that there needs to be a little, perhaps, specific treatment. And in that regard, what I mean here is the account statements are attached to our excerpts, which have been embedded into the record. And if the Court looks at those excerpts, the Court will see that this is not an account that is exclusively devoted to the direct deposit of Social Security benefits. Now, I think that that's particularly important in this particular case because the temporary restraining order that was issued by the Los Angeles County Superior Court came out of a very contentious divorce proceeding. World Savings did not initiate that particular proceeding, didn't participate in it in any way, shape, or form, was simply served with the temporary restraining order, which provided that both Mr. Gorstein was restricted from withdrawing and World Savings and other financial institutions were restricted from allowing withdrawals from all accounts in his name. Now, I don't think we want the banks to be making independent judgments about the validity of a court order. In fact, this is a temporary restraining order. It's not a preliminary injunction. It's not a permanent injunction. In California practice, temporary restraining orders are usually resolved within a matter of days or even a few weeks. This one specifically provided that it was to be in place until further order of Judge Sandoz. Now, I know for a fact that there were lots of proceedings that took place in the Los Angeles County Superior Court, including a four-day court trial, which dealt with property issues, community property, spousal support, all of these things. And so my point is that it really isn't incumbent upon the bank to try and sort all these things out in what is potentially a contentious divorce proceeding or, for that matter, in a proceeding where the bank really has no access to the individual facts. But the parties clearly have the ability to go back to the court and ask for modification, termination. All right. So Mr. Gorstein should have gone to the Superior Court and said, Judge, you just froze my Social Security money. You can't do that. I believe so. But I guess the question I'm struggling with is whether banks do or should have any independent obligation if they know that they're holding Social Security money and they're aware of 407A, whether there is any duty on the bank absent some action by the depositor. I am unaware of any affirmative duty. What's wrong with it with an interpleader? I mean, why wouldn't you take the funds and ask the court to determine it? If you knew there is a statute that said you can't obey legal process, that legal process that attempted to take over the funds was invalid, well, you had a question about it. Why do you would you have to wait for Mr. Gorstein? What's wrong with interpleading the funds? Well, you could do that, indeed. But in this particular case, as noted in our papers, Mr. Gorstein almost immediately made other arrangements to redirect the deposit of his Social Security benefits to another account. But that didn't help the account, the money he had with the bank. That is true. But I guess what I'm saying is that, in a sense, Mr. Gorstein acquiesced in the status quo with regard to the existence of the temporary restraining order. How do you acquiesce if somebody is violating the law and is holding your money illegally? You acquiesce if you don't go file a lawsuit? But World Savings isn't violating the law. Well, that's the question. I mean, you say he acquiesced. If you're not violating the law, it doesn't matter whether he acquiesced or anything else. I agree with Your Honor. But why aren't you violating the law if the law says that this money is — let's assume for the moment this is just a Social Security account, clearly labeled, you know that. If there's a factual question about that, I suppose we would remand if you were wrong about the legal issue. But I thought we were — if we're just dealing with a legal issue, then we would assume this is a Social Security account. You know it, and you get a court order saying you can't give that money to the owner of the account. You must keep it. Now, the question is, why doesn't that violate a statute that says that money is not subject to any legal process? Well, except that it isn't the bank that has initiated the entire chain of events. I know you haven't initiated it. I said, why is it not an invalid court order? And why aren't you — if you get an invalid order, you have no obligation at all? I don't think that the bank has an obligation. I think that Mr. Gorstein certainly, if he was troubled by that particular development, then he should have indeed exercised diligence on his part to go to — I know that Mr. Gorstein may be partly at fault. The question is, is the bank at fault? If you get an order that does — that's clearly illegal about what you're to do with funds, you get an order from a judge who's lost it and tells you take somebody's money and burn it. Do you — are you obligated to follow the order? Are you obligated to resist the order? Well, I think under those circumstances, it might be a lot more clear-cut than it is under the present existing facts. And the reason I say that is because this order does not direct World Savings to take the money, to do anything in particular with it. Basically, it tells you — To withhold it. It directs the World Savings to withhold the money from the rightful owner in contravention of statute. But it also directs the same restriction to Mr. Gorstein individually. Okay. Well, we're not suing Mr. Gorstein here. The question is whether the bank can be sued. I appreciate that, Your Honor. I have trouble understanding why, if you get an invalid order from a court, you can just obey it. You may have a good answer. There may be a reason that a bank is obligated to follow an invalid order. I don't know of any legal authority that says the bank has a duty upon receipt of something that they would recognize as an invalid order. Now, if the court is suggesting that they should have recognized this order as being invalid, then the problem then I have is, where is it that imposes a specific duty on the bank to take some affirmative action? It isn't as though they're depriving Mr. Gorstein of his money. Mr. Gorstein got his money. He got his money with interest. And he would have gotten it sooner, perhaps, if he had actually taken it up with the court that issued the order. He was a party to that particular proceeding. I think, to answer directly, Your Honor asked, couldn't the bank have interpled the money? And I think, yes, they could have. But what we're talking about — You might still have a problem there, though. Suppose you interpled the money and the state court still said, hold the money. Then what do you do? And, in fact, that frequently happens. It's happened to me in a prior case. We've interpled the money. They've returned it to us, said, no, we don't want to deal with it. You deal with it. Perhaps we could have gone through that drill. But the problem with that is it's economically infeasible to do that. And the reason it's economically infeasible to do that in this case is because we're talking about approximately $2,000. It would have cost many times that amount of money for the bank to actually enter into the proceedings in Mr. Gorstein's divorce case in order to try and — I don't think it's unclear. I think it's pretty clear. But try and unscramble the dilemma of whether or not these funds should be simply held in abeyance until Judge Sandoz can make a decision about what to do with spousal support, property distribution, et cetera, in the divorce proceeding. Can I follow up on that? You cited Financial Code Section 952. Did any of the cases applying that section talk about the liability of banks for enforcing restraining orders that turn out to be improvidently issued or invalid? Not that I'm aware of. But basically what I understood from the Financial Code Section 952 to do is to simply take the bank off the dilemma of having to make that kind of a judgment call. Now, I can't point to any cases that say that, but the statute is fairly clear. It says the bank has no liability if it follows a restraining order or an injunction that's issued by a court of competent jurisdiction. It doesn't talk about one that arguably might be facially invalid. It does not. Thank you very much. Thank you very much. All right. Well, thank you both. Thank you, Mr. Gorestein.
judges: Reinhardt, Clifton, Fogel